**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1446-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PETER LEONCE,

     Defendant-Appellant.

_____

Submitted March 2, 2020 – Decided June 2, 2020

Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 11-02-0440.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodesetro, Designated Counsel on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant, Peter Leonce, appeals from the denial of his petition for post-conviction relief (PCR). He was convicted at trial for his role in a gang-related double homicide. The jury found him guilty of murder with respect to one of the victims, twenty-three-year-old Michael Hawkins, and aggravated manslaughter with respect to the other victim, eighteen-year-old Muriah Huff. Defendant, who was a minor when the crimes were committed, raises numerous contentions in this appeal. Most were decided by the PCR court without an evidentiary hearing. All of defendant's PCR claims assert that he received ineffective assistance of counsel at various stages of the criminal proceedings.

With respect to all but two of defendant's contentions, the PCR judge, Judge John Thomas Kelly, concluded that defendant failed to establish that counsel rendered ineffective assistance. Judge Kelly found that counsel had rendered ineffective assistance with respect to the State's motion to transfer the case from juvenile to adult criminal court. Judge Kelly nonetheless concluded that defendant, who was one month shy of his eighteenth birthday when the homicides were committed, did not suffer prejudice from counsel's failure to contest the transfer of jurisdiction to adult criminal court. Judge Kelly concluded that it was not reasonably probable that the outcome would have been different had defendant opposed the State's waiver motion.

After convening a three-day evidentiary hearing, Judge Kelly further found that counsel rendered ineffective assistance in failing to thoroughly investigate a potential alibi witness. However, based on his observation of the witness's testimony at the hearing, Judge Kelly determined that he would have been a poor alibi witness and ultimately would have caused more harm than good for the defense had he testified at trial. Judge Kelly thus found that defendant failed to establish that he suffered prejudice from counsel's failure to thoroughly investigate that witness's potential testimony.

We have reviewed the record in light of defendant's contentions, the parties' briefs, including defendant's pro se submissions, and the applicable legal principles that govern this appeal. We agree with the PCR court that with two exceptions, defendant's PCR claims are either procedurally barred or else fail to meet the Strickland[1] standard for proving that counsel's performance fell outside the range of reasonable professional assistance. With respect to defendant's juvenile waiver contention, we agree with the PCR judge that while counsel's performance was deficient, it is not reasonably probable that jurisdiction would have remained in juvenile court had counsel advised defendant to contest the State's waiver motion. We also agree with the PCR court that while counsel was

---

[1] Strickland v. Washington, 466 U.S. 668 (1984).

A-1446-18T4

obligated to more thoroughly investigate the potential alibi witness, his testimony at trial would not have changed the verdict and if anything would have undermined the defense. We therefore affirm the denial of PCR substantially for the reasons set forth in Judge Kelly's thorough and cogent oral opinion.

## I.

We briefly summarize the procedural history leading up to this appeal. Defendant was one of nine persons who were charged in connection with the gang-related double homicide. The State filed a motion pursuant to N.J.S.A. 2A:4A-26 (repealed 2016) to transfer jurisdiction from juvenile to adult criminal court. The Family Part judge granted the application after defendant waived his right to a hearing on advice of counsel.

Defendant was thereafter charged by indictment with multiple counts including (1) first-degree murder, (2) first-degree felony murder, (3) first-degree kidnapping, (4) first-degree conspiracy to commit murder/kidnapping, (5) third-degree possession of a weapon for an unlawful purpose, (6) fourth-degree unlawful possession of a weapon, and (7) third-degree hindering apprehension or prosecution.

Defendant moved to suppress an incriminating statement he gave to police during a custodial interrogation. The trial court conducted an evidentiary

hearing after which it denied defendant's suppression motion. The case proceeded to trial. The jury found defendant guilty of the murder of Michael Hawkins, the aggravated manslaughter of Muriah Huff, criminal restraint, kidnapping, conspiracy to commit murder, and hindering apprehension.

The trial judge sentenced defendant to an aggregate term of forty-five years in state prison. More specifically, the judge sentenced defendant to a thirty-year term of imprisonment and parole ineligibility on the murder conviction and a consecutive fifteen-year sentence subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the aggravated manslaughter conviction. The sentences imposed on the remaining counts run concurrently to the murder/aggravated manslaughter consecutive sentences.

On direct appeal, we affirmed the trial convictions and consecutive sentences but remanded for the trial court to merge the conspiracy counts with the substantive offenses. State v. Leonce, No. A-3711-13 (App. Div. Sept. 16, 2016). The New Jersey Supreme Court denied certification. State v. Leonce, 229 N.J. 602 (2017).

Defendant filed a pro se PCR petition that was followed by an amended petition submitted on defendant's behalf by assigned counsel. Defendant raised nine distinct issues for the PCR court's consideration. All of defendant's PCR

contentions assert that he received ineffective assistance of counsel pertaining to the waiver to adult court, the motion to suppress his statement, the jury trial, and the sentencing hearing. Judge Kelley ordered an evidentiary hearing only on whether trial counsel was ineffective for failing to investigate and call three specified witnesses at trial. The PCR court denied defendant's request for an evidentiary hearing with respect to the other contentions. After hearing oral argument, Judge Kelly denied defendant's petition for PCR for reasons spelled out in a comprehensive and highly detailed oral opinion that spans forty-nine pages of transcript. Defendant now appeals from that decision.

## II.

The facts adduced at trial concerning defendant's role in the brutal killing of Michael Hawkins and Muriah Huff are recounted in our prior opinion and need only be briefly summarized in this opinion. Defendant was a member of the Luerdes Park Piru gang, which is associated with the Bloods. Michael Hawkins was a member of a rival gang, the Hoover Crips. Muriah Huff was not affiliated with a gang.

On February 22, 2010, both victims visited the residence of codefendant Dennis Welch on Berkley Street in Camden. Other members of the Luerdes Park Piru gang lived in that house, which was rented by Welch's mother. Gang

A-1446-18T4

members who were present believed Hawkins had previously stolen a bottle of liquor from them. At some point, Huff left Welch's bedroom and went downstairs. Hawkins remained in the bedroom with defendant, Welch, and several other Luerdes Park Piru gang members. An upper-echelon gang member ordered female gang members in the house to distract Huff. After a few minutes, Hawkins began screaming, "stop, please help me." Huff tried to go upstairs when she heard the screaming but the female gang members prevented her from assisting Hawkins.

Defendant, Welch, and several other gang members kicked Hawkins and beat him with their fists and a baseball bat. They tied him up, placed duct tape over his mouth, and shoved him into the bedroom closet. They then rummaged through Hawkins's backpack and discovered a piece of paper linking him to the rival Crips gang. They took a photograph of Hawkins showing him bound and beaten and electronically sent the photo to other Luerdes Park Piru gang members with instruction to come to the house immediately.

When they arrived at the house, the other gang members, including the gang leader, proceeded upstairs to Welch's bedroom. One of the gang members opened the closet door whereupon the leader shot Hawkins in the head five times from a distance of six inches. Hawkins was still breathing, however. The leader

told the other members, including defendant, to "finish him." The leader and Welch then went downstairs to confront Huff. The gang members remaining in the bedroom proceeded to beat Hawkins to death, breaking every bone in his face.

Defendant went downstairs to find the gang leader screaming at Huff that she "set him up." Huff pleaded for her life, claiming she "didn't do it." The gang leader put his gun against Huff's head and pulled the trigger, but the gun was empty. He then struck Huff with the gun twice in the face and ordered the female gang members to "F her up." As instructed, the females began beating Huff.

During the attack, Huff pleaded for the female assailants to stop, screaming that "she didn't know, and she didn't do it." Welch's mother, who rented the house, attempted to intervene. The female gang members ignored her, and Welch escorted his mother to her bedroom and told her to stay there.

The assault on Huff continued mercilessly. One of the female assailants broke a chair over Huff. The females then used parts of the broken chair to strike the victim. Despite Huff's continuing pleas and her promise that she would remain silent, the gang leader ordered the females to kill Huff. One female attempted to strangle Huff with her hands. Eventually, one of the male

A-1446-18T4

gang members handed her a rope to use as a ligature. The female assailant placed the rope around Huff's neck, put her knee against Huff's back, and pulled on the rope. When that technique failed, a male gang member joined in pulling on the rope as Huff tried desperately to resist. The female then picked up a knife and attempted to stab Huff while the male gang member continued to pull on the rope around Huff's neck. The female tried to stab Huff, but the knife "just kept bouncing off." A male gang member took the knife and stabbed Huff several times. Defendant checked Huff's pulse and determined she was still alive.[2] The State maintains that defendant then took a plastic bag and placed it over Huff's head, finally killing her.[3]

The gang members stripped the victims' clothing and carried the bodies to the basement. Defendant participated in cleaning up the house and disposing the baseball bat, rope, and victims' clothing. Defendant, Welch, and a third male gang member then dug a hole in the back yard and buried the victims. Police discovered the bodies three days later.

---

[2] One of the female gang members, Shatara Carter, who was also Leonce's girlfriend, gave conflicting testimony, initially stating that defendant had checked Huff's pulse but later claimed that "he didn't touch her."

[3] Shatara Carter also told police that defendant placed the plastic bag over Huff's head. She testified at trial, however, that she was the one who placed the bag over the victim's head.

A-1446-18T4

III.

Defendant, through his assigned counsel, raises the following contentions

for our consideration:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT ESTABLISHED THE TESTIMONY OF DONALD WILLIAMS WOULD HAVE ESTABLISHED AN ALIBI TO THE MURDERS OF HAWKINS AND HUFF, THEREBY RAISING REASONABLE DOUBT REGARDING DEFENDANT'S GUILT.


POINT II

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING AS TRIAL COUNSEL WAS INEFFECTIVE AT SENTENCING IN FAILING TO ARGUE DEFENDANT WAS RECEIVING A SENTENCE THAT WAS THE EQUIVALENT OF LIFE IMPRISONMENT.

POINT III

THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING AS TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO ADVISE DEFENDANT REGARDING ALL ASPECTS OF HIS JUVENILE WAIVER HEARING, INCLUDING HIS RIGHT TO CALL WITNESSES ON HIS BEHALF AND FAILING TO INFORM HIM HE

COULD CHALLENGE EVIDENCE THE STATE WAS PRESENTING AGAINST HIM.

Defendant also submitted a pro se brief raising the following contentions:

POINT I

THE PCR COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF OR IN THE ALTERNATIVE, ORDERING AN EVIDENTIARY HEARING ON [DEFENDANT]'S CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

A. TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING THE STATE TO PRESENT CONFLICTED THEORIES THAT WAS VIRTUALLY UNCONTESTED. THIS VIOLATION DEPRIVED DEFENDANT OF EFFECTIVE ASSISTANCE OF COUNSEL.

B. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO INFORM PETITIONER AND/OR HIS PARENT OF THE RISKS AND CONSEQUENCES OF AGREEING TO A VOLUNTARY WAIVER TO ADULT COURT AND FOR FAILING TO ADVISE PETITIONER OF HIS RIGHTS AT THE JUVENILE WAIVER HEARING.

C. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO CALL PETITIONER

11

AND HIS MOTHER TO TESTIFY AT HIS SUPPRESSION HEARING.

D.   TRIAL   COUNSEL   WAS CONSTITUTIONALLY   INEFFECTIVE FOR NOT CALLING PETITIONER TO TESTIFY AT TRIAL.

E.   TRIAL   COUNSEL   WAS CONSTITUTIONALLY   INEFFECTIVE FOR   FAILING   TO   OBJECT   TO DETECTIVE   PATRICIA   TULANE'S INADMISSIBLE   HEARSAY TESTIMONY.

F.   TRIAL   COUNSEL   WAS CONSTITUTIONALLY   INEFFECTIVE FOR FAILING TO CALL ARNETTA WELCH, DONALD WILLIAMS JR. [,] AND CLIVE HINDS AS DEFENSE WITNESSES AT TRIAL.

G.   TRIAL   COUNSEL   WAS CONSTITUTIONALLY   INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTOR DISMISSING COUNTS SEVENTEEN AND EIGHTEEN OF THE INDICTMENT.

POINT II

THE STATE'S STAR WITNESS DARRLY [SIC] PIERRE RECANTED HIS TESTIMONY ON DEFENDANT'S POST-CONVICTION RELIEF, WHICH SUBSTANTIALLY DEPLETED THE STATE'S EVIDENCE AGAINST THE DEFENDANT.

POINT III

THE DEFENDANT MUST BE RESENTENCED WITH THE COURT GIVING DUE CONSIDERATION THAT THE <u>MILLER</u>[4]/<u>ZUBER</u>[5] FACTORS WHICH ARE CONSTITUTIONALLY REQUIRED FOR IMPOSING LENGTHY, CONSECUTIVE TERMS OF IMPRISONMENT ON JUVENILE OFFENDERS BEING SENTENCED IN ADULT COURT.

IV.

We begin our analysis by acknowledging the legal principles governing this appeal. Post-conviction relief serves the same function as a federal writ of habeas corpus. <u>State v. Preciose</u>, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish by a preponderance of the credible evidence that he or she is entitled to the requested relief. <u>Ibid.</u> (citations omitted). The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." <u>State v. Mitchell</u>, 126 N.J. 565, 579 (1992).

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. <u>Strickland</u>, 466 U.S.

---

[4] <u>Miller v. Alabama</u>, 567 U.S. 460 (2012).
[5] <u>State v. Zuber</u>, 227 N.J. 422 (2017).

13                                                          A-1446-18T4

at 686 (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A defendant, in other words, "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (citation omitted).

Furthermore, in determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny . . . must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, 466 U.S. at 689). Moreover, "[t]he quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the

context of the State's evidence of [a] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The second Strickland prong is particularly demanding. "[T]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting Castagna, 187 N.J. at 315).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with his or her ineffective assistance claim. Preciose, 129 N.J. at 462–63. The PCR court should grant an evidentiary hearing when a defendant is able to prove a

prima facie case of ineffective assistance of counsel, there are material issues of disputed fact that must be resolved with evidence outside of the record, and the hearing is necessary to resolve the claims for relief. Id. at 462; R. 3:22-10(b). To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland test. Preciose, 129 N.J. at 463. "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462–63.

"In order to establish a prima facie claim, a petitioner must do more than make bald assertions that [he or she] was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The petitioner must allege specific facts sufficient to support a prima facie claim. Ibid. Furthermore, the petitioner must present these facts in the form of admissible evidence. In other words, the relevant facts must be shown through "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid.; see also R. 3:22-10(c) ("Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification . . . and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing.").

As a general proposition, we defer to a PCR court's factual findings "when supported by adequate, substantial and credible evidence." State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros, Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, when the trial court does not hold an evidentiary hearing, we "may exercise de novo review over the factual inferences drawn from the documentary record." Id. at 421 (citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 n.5 (3d Cir. 1991)). Similarly, we review de novo the PCR court's legal conclusions. State v. Nash, 212 N.J. 518, 540–41 (2013) (citing Harris, 181 N.J. at 415–16).

V.

We first address defendant's contention that his counsel was ineffective for failing to argue that the consecutive sentences he received on his murder and aggravated manslaughter convictions violate the principles set forth in Miller and Zuber. The United States Supreme Court in Miller held that youth and its attendant characteristics must be considered at the time a juvenile is sentenced to life imprisonment without the possibility of parole. 567 U.S. at 465. The Court outlined a series of relevant factors that courts must consider before imposing that sentence. Id. at 479–80 (identifying certain characteristics of the juvenile defendants relevant to sentencing, including the juvenile's role in the

offense, the juvenile's history of abuse or neglect, periods of time spent in foster care, prior suicide attempts, and a limited prior criminal history).

In <u>Zuber</u>, the New Jersey Supreme Court concluded that the same Eighth Amendment principles addressed in <u>Miller</u> apply to sentences that are the practical equivalent of life without parole. 227 N.J. at 429. The Court in <u>Zuber</u> held that before a judge imposes consecutive terms that would result in a lengthy overall term of imprisonment for a juvenile, the court must consider the <u>Miller</u> factors along with other traditional concerns. <u>Ibid.</u>

This is not the first time defendant has presented the <u>Miller/Zuber</u> argument to us. We addressed this contention on the merits when we reviewed, and ultimately affirmed, defendant's aggregate sentence on his direct appeal. <u>Leonce</u>, slip op. at 31–32. <u>Rule</u> 3:22-5 provides that "a prior adjudication upon the merits . . . is conclusive." We therefore agree with the PCR court that defendant is barred from raising the <u>Miller</u>/<u>Zuber</u> contention in the present PCR petition under the guise of ineffective assistance of counsel.

Even if we were to disregard the procedural bar, defendant's claim that counsel rendered ineffective assistance at the sentencing hearing lacks merit under <u>Strickland</u> analysis. For one thing, contrary to defendant's present claim,

his trial counsel did not fail to argue the Miller factors at the time of sentencing.[6] Rather, counsel in his sentencing allocution highlighted defendant's youth and argued that imposition of consecutive sentences on the homicide convictions would be the equivalent of life without parole. Counsel, in other words, explicitly addressed the Miller factors at the sentencing hearing, arguing that the sentences imposed on defendant's murder and aggravated manslaughter convictions should be served concurrently, not consecutively, even though they involve two different victims. See generally State v. Yarbough, 100 N.J. 627 (1985) (providing guidance on when to impose consecutive sentences); see also State v. Carey, 168 N.J. 413, 429–30 (2001) (noting that "the multiple-victims factor [in Yarbough] is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths or serious bodily injuries have been inflicted upon multiple victims by the defendant"); State v. Kelly, 406 N.J. Super. 332, 353 (App. Div. 2009), aff'd, 201 N.J. 471 (2010) (affirming consecutive sentences imposed for a double murder).

The first Strickland prong requires a defendant to show that counsel, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 466 U.S. at 687. In this instance,

---

[6] At the time of sentencing, Zuber had not yet been decided.

counsel's performance at the sentencing hearing was not constitutionally deficient. Counsel made appropriate arguments on defendant's behalf with respect to the factors set forth in Miller and preserved the issue for appellate review. See State v. DiFrisco, 174 N.J. 195, 219–20 (2002) (observing that a trial strategy's failure to obtain the optimal outcome for a defendant is insufficient to show that counsel was ineffective) (citing State v. Bey, 161 N.J. 233, 252 (1999)). Accordingly, defendant has not overcome the strong presumption that counsel's performance at the sentencing hearing fell within the wide range of reasonable professional assistance. Strickland, 467 U.S. at 689.

Furthermore, defendant cannot show that he was prejudiced by counsel's performance at the sentencing hearing, especially in view of our ruling on direct appeal in which we rejected defendant's Miller/Zuber argument and affirmed the consecutive homicide sentences. Defendant has failed to establish that it is reasonably probable that any additional arguments counsel might have made at the sentencing hearing would have led to concurrent sentences or a shorter aggregate sentence.[7] Defendant has thus failed to establish the second prong of the two-part Strickland test. 466 U.S. at 694.

---

[7] We note that the thirty-year period of parole ineligibility was the minimum sentence that could be imposed on defendant's murder conviction. N.J.S.A.

Defendant next contends his counsel rendered ineffective assistance in challenging the admissibility of the incriminating statement defendant gave to police. Specifically, defendant contends counsel was ineffective by not calling him and his mother to testify at the suppression hearing.

Counsel argued before the motion court that defendant's statement was not voluntary because (1) his sister accompanied him to the interview and her children were also being investigated in this case; (2) neither of his parents were present; and (3) he did not understand some of the language used to explain his Miranda rights. The motion court rejected those arguments, finding that the investigator's testimony concerning her efforts to reach out to defendant's parents was credible and that those efforts were constitutionally sufficient. See State v. Presha, 163 N.J. 304, 316 (2000) (holding that police officers must use their best efforts to locate a parent or legal guardian before beginning a custodial interrogation of a minor; the prosecutor must show to the trial court's satisfaction

---

2C:11-3(b). The trial judge did not impose the life sentence authorized by N.J.S.A. 2C:11-3(b), which, under NERA, would have resulted in a parole ineligibility term of almost sixty-nine years. Furthermore, the fifteen-year sentence imposed on defendant's aggravated manslaughter conviction is at the lower end of the ten-to-thirty-year range authorized pursuant to N.J.S.A. 2C:11-4(c).

that police were unable to locate a parent (citing In re J.F., 286 N.J. Super. 89, 98 (App. Div. 1995))). The motion court concluded ultimately that defendant's statement was voluntary and admissible.

On direct appeal, we affirmed the motion court's denial of defendant's suppression motion. Leonce, slip op. at 22–28. In reaching our conclusion that defendant's statement was properly admitted, we relied in part on the motion court's finding that Investigator Tulane was credible when she testified as to the efforts she made to locate defendant's parents prior to questioning him. We ruled that the efforts that were undertaken by Investigator Tulane to locate defendant's parents were sufficient and that the interrogation was properly conducted with defendant's older sister standing in place of a parent. Leonce, slip op. at 27–28.

As we have noted, Rule 3:22-5 precludes consideration of a PCR claim that has already been adjudicated on the merits. In an effort to circumvent that procedural bar, defendant seeks to recast his previously adjudicated suppression argument as an ineffective assistance of counsel claim. We agree with the PCR court that defendant's present ineffective assistance claim is substantially similar to the voluntariness argument we have already rejected. But even assuming that defendant's ineffective assistance contention is not procedurally barred under

Rule 3:22-5, we conclude defendant has failed to establish either prong of the Strickland test with respect to counsel's performance at the suppression hearing.

We first address defendant's contention that counsel was ineffective for failing to have defendant testify at the hearing. In order to establish that counsel rendered constitutionally deficient assistance based on the failure to call a witness, a defendant seeking to establish the first prong of the Strickland test must overcome the presumption that the failure to call the witness "might be considered sound trial strategy." State v. Arthur, 184 N.J. 307, 320 (2005) (quoting Strickland, 466 U.S. at 689). Determining which witnesses to call to the stand is an "an art." Id. at 321 (quoting Strickland, 466 U.S. at 693).

> A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors.
>
> [Id. at 320–21.]

Given the difficulty inherent in selecting witnesses, a court's review of counsel's decision must be "highly deferential." Id. at 321 (quoting Strickland, 466 U.S. at 689).

Applying that deferential standard of review to the circumstances presented in this case, we agree with the PCR court that it was a reasonable strategic decision to prevent defendant from being subjected to cross-examination by the prosecutor. We therefore conclude that the decision not to have defendant testify fell within the range of reasonable professional assistance. Strickland, 466 U.S. at 689.

Furthermore, defendant has not established that he was prejudiced by the decision not to call him as a witness at the suppression hearing. Defendant has not presented any new legal or fact-sensitive arguments that his testimony would have addressed. As we have noted, the motion court found Investigator Tulane credible as to the circumstances of the interrogation. We therefore agree with Judge Kelly's conclusion that defendant's testimony would not have had a reasonable probability of changing the outcome of the suppression motion. Strickland, 466 U.S. at 694.

We turn to counsel's decision not to call defendant's mother as a witness at the suppression hearing. Defendant claims in his pro se brief that his mother would have testified that police prevented her from being present during his interrogation. Cf. Presha, 163 N.J. at 320 (observing that when there has been a deliberate exclusion of a parent or legal guardian, the juvenile's confession

"almost invariably will be suppressed").  However, defendant fails to support this contention with sufficient, competent proofs.

Defendant "must do more than make bald assertions that [he or she] was denied the effective assistance of counsel."  Cummings, 321 N.J. Super. at 170.  Rather, he must present facts in the form of admissible evidence, that is, "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification."  Ibid.  Given the absence of any certification or affidavit from defendant's mother asserting that police affirmatively prevented her from attending the interrogation, we treat this PCR contention as a bald assertion and reject it.

Defendant also claims his mother would not have allowed defendant's sister to "fill in" as his guardian for purposes of protecting his Fifth and Sixth Amendment rights.  Defendant asserts in his pro se brief that he presented a certification to this effect to the court that heard the suppression motion.  However, the record before us does not include any such certification.[8]

---

[8] The only certification from defendant in the record asserts that the investigator who took his statement never asked him for his mother's contact information or allowed him to try to contact his mother.  This assertion is not enough to warrant an evidentiary hearing to expand the PCR record, much less warrant a new suppression hearing.  As noted, to meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland

In any event, his mother's testimony that she would not have consented to the interrogation had she been present would not have created a reasonable probability that the outcome of the suppression hearing would have been different. Strickland, 466 U.S. at 694. One of the critical issues framed at the suppression hearing was whether police complied with the rules set forth in Presha governing the interrogation of minors over the age of fourteen. 163 N.J. at 317 (explaining that because the defendant was nearly seventeen years old at the time of the interrogation, stricter rules governing the interrogation of juveniles under the age of fourteen did not apply).

When the custodial interrogation of a juvenile is lawfully conducted in the absence of a parent, a parent cannot void that ruling by later claiming he or she would not have consented to the interrogation had he or she been present. To hold otherwise would upend the holding in Presha by imposing, for all practical purposes, a per se rule that requires police to refrain in all cases from conducting a custodial interrogation without a parent present or else risk suppression of an

---

two-part test. Preciose, 129 N.J. at 463. We conclude defendant cannot show a reasonable likelihood of satisfying the second prong of the Strickland test in view of the motion court's finding that the investigator was credible in describing her efforts to contact defendant's parents before taking his statement.

otherwise voluntary confession at the parent's subsequent election.[9]  Defendant offers no authority for the proposition that an absent parent holds such power to nullify a trial court's ruling—and in this case, an appellate court's ruling as well—that police were permitted to proceed with the interrogation in the parent's absence after having made reasonable efforts to contact the parent.

In sum, the admissibility of a juvenile's confession is determined from the totality of circumstances that existed when the custodial interrogation was conducted, including whether police had made a reasonable effort to contact a parent.  When as in this case police made such an effort, thereby satisfying the rule announced in Presha, admissibility of a confession does not depend on what might have happened had an absent parent been present.  Because we have already ruled that the custodial interrogation was lawfully conducted in the absence of defendant's mother, her testimony at the suppression hearing would not have changed the conclusion that defendant's statement was admissible.

---

[9]  Presha held the absence of a parent or legal guardian from the interrogation of a juvenile is a "highly significant factor" when determining whether the minor's waiver of rights was knowing, intelligent, and voluntary.  163 N.J. at 315.  The Court did not, however, impose a per se rule requiring in all cases that a parent be present.

27

## VII.

We turn next to defendant's claim that his counsel was ineffective by failing to advise him of his right to contest the State's motion to transfer the case from juvenile to adult criminal court. Judge Kelly found that defendant was afforded only fifteen minutes notice before being asked to waive his right to contest the transfer of jurisdiction. Judge Kelly aptly described the lack of prior notice as "problematic," especially considering the significant sentencing consequences of an adult homicide conviction as compared to a juvenile adjudication of delinquency.[10]

Judge Kelly concluded that given the abrupt manner in which defendant was induced by his counsel to consent to the transfer of jurisdiction, defendant has established the first prong of the Strickland test. The PCR court concluded, however, that defendant failed to establish the second prong in the Strickland analysis because it is not reasonably probable that the Family Part judge would

---

[10] A juvenile adjudicated delinquent for murder is not subject to NERA or any other mandatory sentence or term of parole ineligibility. See N.J.S.A. 2A:4A-44 (permitting the sentencing court to impose a term of imprisonment but not a period of parole ineligibility). The record shows that the Family Part judge explained to defendant the difference between the potential adult sentence and juvenile disposition. Defendant responded that he understood. Defendant and his attorney engaged in a colloquy on the record in which defendant indicated he understood the nature of the proceedings and wished to waive the hearing.

have denied the State's waiver motion had it been contested. We agree that defendant has failed to establish that he was prejudiced by counsel's handling of the State's waiver motion. Given the nature of the charges and the strength of the State's proofs, it is highly unlikely that counsel could have done anything to have prevented the transfer of this double homicide prosecution to adult criminal court.

The statutory framework for waiving a juvenile prosecution to adult criminal court in force at the time was codified in N.J.S.A. 2A:4A-26 (repealed 2016). That statute provided:

> a. On motion of the prosecutor, the court <u>shall, without the consent of the juvenile</u>, waive jurisdiction over a case and refer that case from the Superior Court, Chancery Division, Family Part to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing, that:
>
>> (1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and
>>
>> (2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
>>
>>> (a) Criminal homicide other than death by auto . . . .
>
> [<u>Ibid.</u> (emphasis added).]

Our review of the statutory elements set forth in N.J.S.A. 2A:4A-26 shows that waiver to adult court in this case was virtually assured upon the State's motion. It is not disputed that defendant was older than fourteen when the homicides occurred. Indeed, he was just one month shy of turning eighteen. Nor can it be disputed that defendant was charged with "homicide other than death by auto." Thus, the only waiver element under N.J.S.A. 2A:4A-26 that could have been contested was whether there was probable cause to believe that defendant committed the crimes.[11]

Probable cause "is 'a well-grounded suspicion or belief that the juvenile committed the alleged crime.'" A.D., 212 N.J. at 205 (quoting State v. J.M., 182 N.J. 402, 417 (2005)). "The trial court should find probable cause if the evidence presented and the reasonable inferences supported by that evidence give rise to a well-grounded suspicion or belief in the juvenile's guilt." Id. at 221. This standard of proof is similar to the one that guides a grand jury's determination whether or not to indict. Id. at 205–06.

---

[11] As a result of a 2000 amendment to the waiver statute, juveniles sixteen or older were no longer entitled to present evidence that the prospect of rehabilitation substantially outweighs the reasons supporting the waiver once the State has established probable cause. State ex rel. A.D., 212 N.J. 200, 204 (2012). Accordingly, involuntary waiver in this case essentially would have been automatic once probable cause had been established.

The record shows that at the time of the State's waiver application, the prosecutor was in possession of statements from multiple codefendants that defendant participated in the homicides. Had the waiver motion been challenged, the State would have been able to present evidence that satisfies the probable cause standard of proof. We thus conclude, as did the PCR court, that defendant suffered no prejudice under the second Strickland prong because the ultimate outcome of the State's waiver application would have been the same even if counsel had vigorously opposed the State's motion. Accordingly, defendant is not entitled to post-conviction relief regarding the transfer of jurisdiction and ensuing penal consequences. Strickland, 466 U.S. at 687.

VIII.

Defendant contends his counsel rendered ineffective assistance at trial by failing to object to what defendant now characterizes as "conflicting theories" as to the manner in which Muriah Huff was killed. Specifically, defendant contends the State presented conflicting evidence as to whether Huff was strangled with a rope or suffocated with a plastic bag. He contends that counsel somehow rendered constitutionally deficient assistance by failing to object to the introduction of evidence concerning the use of both a rope and plastic bag to finish off the helpless victim.

31

This contention lacks merit and warrants only brief discussion. R. 2:11-3(e)(2). It is legally irrelevant for purposes of this appeal whether the victim's death resulted ultimately from strangulation by ligature or suffocation. The State adduced evidence the victim was subjected to both forms of lethal force, as well as to stabbing and beating. In these circumstances, defendant's culpability as an active participant in this brutal crime does not depend on which of these types of lethal force finally caused the victim's death. The State was permitted, in other words, to present multiple "theories," to use defendant's characterization. Any objection made by counsel on the grounds defendant now posits would have been frivolous. We therefore affirm the denial of PCR on this contention substantially for the reasons succinctly explained by Judge Kelly.

IX.

We turn next to defendant's contention that counsel was ineffective in advising him not to testify at trial. He further argues that the PCR court should have convened an evidentiary hearing to examine counsel's basis for advising defendant not to testify. We agree with the PCR court that defendant has failed to establish a prima facie case warranting an evidentiary hearing much less grounds for a new trial.

32

Defendant claims he told his attorney he wanted to testify on his own behalf in order to rebut the State's "lies," but his attorney advised him not to take the stand because that would increase the chance of conviction. Defendant acknowledges on appeal that in the statement he gave to police, he admitted to being a gang member and also admitted to being present at the murder scene. He now contends that had he testified at trial, he would have acknowledged that he assaulted Hawkins but was outside the house when the gang leader came by to kill Hawkins. He also maintains that his credibility as a witness would have swayed the jurors.

These assertions are unpersuasive. We do not believe that counsel was ineffective in advising defendant not to testify. As the PCR judge correctly ruled, defendant has failed to establish a reasonable likelihood of success under the Strickland two-pronged test. Defendant therefore has not established a prima facie case warranting a hearing to expand the record. Preciose, 129 N.J. at 463. The testimony that defendant now claims he would have given would only have corroborated the State's proofs that he had beaten Hawkins shortly before his death. Defendant also would have been subject to cross-examination as to the timing and sequence of events that might further have exposed his culpability. We therefore conclude that counsel's advice was sound strategy that we decline

33

to second guess.  See Norman, 151 N.J. at 37 ("'Judicial scrutiny of counsel's performance must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" (quoting Strickland, 466 U.S. at 689)).

We further conclude that defendant has failed to establish the second Strickland prong.  Despite defendant's confidence in his ability to sway the jurors, he has not established that it is reasonably likely that had he testified and admitted that he had beaten Hawkins but did not intend for him to die, the trial verdict would have been more favorable.

We add with respect to the potential prejudicial effect of counsel's advice that the record clearly shows that defendant was told that the decision whether to testify was his and his alone to make.  The trial court engaged defendant in an appropriate colloquy on the record during which the judge made clear that defendant had the right to testify on his own behalf notwithstanding the recommendation of his counsel.  Defendant unequivocally stated that he did not wish to testify.  In these circumstances, defendant is hard pressed to show that he was in any way prejudiced by his attorney's advice.

## X.

Defendant next claims counsel was ineffective by failing to object to a hearsay statement made at trial by Investigator Tulane. During direct examination, the prosecutor asked the investigator where she had received information that defendant placed the plastic bag on Muriah Huff's head. The investigator answered that one of the female gang members, Shatara Carter, had implicated defendant while testifying at trial for another defendant, Clive Hinds.

Defense counsel did not object to this hearsay testimony. Instead, he used Tulane's hearsay statement in an attempt to discredit her competence and objectivity, and to highlight the absence of forensic evidence against his client. During cross-examination, counsel questioned Tulane on this issue and induced her to admit there was no physical evidence linking defendant to the bag used to suffocate Huff, only statements of other witnesses. During this cross-examination, Tulane also indicated that Clive Hinds also implicated defendant in Huff's death. After Tulane testified that Hinds linked defendant to the plastic bag, defense counsel attacked the credibility of that statement, noting that Hinds was also charged with murder, did not provide the statement under oath, and the statement had not been subject to cross-examination.

A-1446-18T4

In his summation, counsel attacked the credibility of the statement Investigator Tulane relied upon. Counsel noted that the State had called other witnesses, including Shatara Carter, who testified that someone other than defendant placed the plastic bag over Huff's head. Counsel further argued to the jury that the State had not called Hinds as a witness.

The PCR court noted that a timely objection to Investigator Tulane's hearsay testimony might have better served defendant's interests. After reviewing the record as a whole, and given the benefit of hindsight, we agree with that observation. Cf. Norman, 151 N.J. at 37 (cautioning reviewing courts to avoid judging counsel's performance under the "distorting effects of hindsight." (quoting Strickland, 466 U.S. at 689)). But we also agree with the PCR judge that the decision not to object to the hearsay statement was a reasonable strategic choice when viewed in the context of counsel's cross examination of Tulane and his closing arguments challenging her credibility and investigative prowess. Allowing the jury to hear about Hind's assertion via Tulane provided an opportunity for the defense to expose the investigator's reliance upon self-interested sources of information. It also enabled counsel to argue that Tulane relied on statements made by a witness the prosecutor did not present before the jury.

In view of the high degree of deference afforded to trial counsel in making such strategic choices, we conclude that defendant has failed to overcome either the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, or the closely related presumption that the challenged action "'might be considered sound trial strategy.'" Ibid. (citation omitted).

## XI.

Defendant next contends that his trial counsel rendered ineffective assistance by failing to object to the State's motion to dismiss two counts of the indictment pertaining to the rope used in the course of killing Muriah Huff. This contention lacks sufficient merit to warrant extensive discussion in this opinion. R. 2:11-3(e)(2).

The indictment identified the rope as a weapon used against Muriah Huff and charged defendant with possession of the rope and possession for an unlawful purpose. The prosecutor moved to dismiss those weapons counts at the conclusion of the State's case in recognition that the State had presented no testimony that defendant possessed the rope. The record shows that defendant considered whether to object to the dismissal but elected not to do so when the judge explained that if counsel objected and commented on the dismissal in his

summation, the prosecutor would be permitted to respond to the defense argument in the State's summation. We conclude, as did the PCR court, that counsel's election to refrain from objecting in these circumstances was a strategic decision that falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689.

XII.

We turn next to defendant's contention that his counsel was ineffective by failing to thoroughly investigate and call three witnesses to testify at trial: Donald Williams, Clive Hinds, and Arnetta Welch. As to these contentions, Judge Kelly found that defendant had established the need to expand the record. The PCR court thereupon convened an evidentiary hearing that was conducted over the course of three days.

We note that the standard of review we apply is more limited when a PCR judge holds an evidentiary hearing. See State v. Nash, 212 N.J. 518, 540 ("Our standard of review is necessarily deferential to a PCR court's factual findings based on its review of live witness testimony."). We also have already acknowledged the deferential standard that applies under Strickland analysis when reviewing an attorney's decision whether to call a witness. See Arthur, 184 N.J. at 321 (opining that a PCR court's review of counsel's decision whether

38

to call a witness must be "highly deferential" (quoting <u>Strickland</u>, 466 U.S. at 689)).

A.

Because our review is necessarily fact-sensitive, we address defendant's ineffective assistance claims with respect to each potential witness separately. We begin with defendant's contention that his counsel was ineffective for failing to properly investigate the potential testimony of Donald Williams. Williams certified that he was outside the house smoking marijuana with defendant during the murders and "never heard [defendant] threaten or kill anyone." Defendant thus contends Williams would have served as an alibi witness.

At the evidentiary hearing, both defendant and his trial counsel testified that defendant informed counsel that defendant was outside smoking marijuana with Williams at the time of the murders. Counsel testified that he believed that Williams' version was inconsistent with the testimony expected from other witnesses in the case. Counsel candidly acknowledged, however, that he did not perform a complete investigation with respect to Williams' potential testimony.

Judge Kelly found that counsel's failure to perform a thorough investigation into whether Williams might have provided helpful testimony was

unreasonable and amounted to ineffective assistance. We agree with the PCR judge that defendant has established the first prong of the <u>Strickland</u> test. Our focus thus turns to whether defendant has also established that he suffered prejudice by the failure to call Williams as a defense witness at trial.

Both Williams and defendant testified at the PCR evidentiary hearing. As Judge Kelly emphasized in his factual findings, their versions of events were not consistent. Williams testified he and defendant were smoking marijuana in Williams's car for about an hour outside the house in which Hawkins and Huff were murdered. Williams testified that no one exited the house to talk to defendant and that once they were done smoking marijuana, defendant went into the house and did not come back out. Williams then left.

The version of events defendant presented in his PCR hearing testimony was very different. Defendant testified that while he was in the car with Williams, the gang leader exited the house, told defendant something happened inside the home, and instructed defendant to go inside. Defendant testified that when he went inside, he learned the murders had occurred. He then went outside to tell Williams what happened.

The PCR court found that, "given these inconsistencies, Williams would have been a poor alibi witness. His version of events place defendant at the

property and in fact inside Berkley Street at the time of the murders and gave him ample opportunity to participate." Judge Kelly concluded that, "if Mr. Williams in fact had been called as a witness, he would have tremendously harmed [defendant's] position."

Our own review of the record supports Judge Kelly's finding that Williams would have been a weak alibi witness at best, especially because the timeline he presented gave defendant ample time to participate in the murders. As the PCR court aptly noted, Williams's testimony would have placed defendant at the scene of the crime smoking a copious quantity of marijuana. We therefore affirm the PCR court's ruling that defendant failed to establish that it is reasonably probable that the outcome of the trial would have been different had Williams testified for the defense. Strickland, 466 U.S. at 694; see also State v. Drisco, 355 N.J. Super. 283, 291 (App. Div. 2002) ("Counsel's fear that a weak alibi could cause more harm than good is the type of strategic decision that should not be second guessed on appeal.").

B.

Hinds testified at the evidentiary hearing that defendant was outside the house at the time the murders were committed inside. However, it is highly unlikely that Hinds would have been available to testify at defendant's trial, and

even if he were, his credibility as a defense witness would have been impeached by prior statements he gave to police that inculpated defendant in the killings. After reviewing the record, we affirm the PCR court's conclusion that defendant has not established either prong of the Strickland test by his counsel's failure to secure Hinds as a trial witness.

At the time of defendant's trial, Hinds's own trial conviction arising from the Hawkins and Huff homicides was pending on appeal. Defendant's trial counsel testified at the PCR evidentiary hearing that he would not have been able to call Hinds as a witness without consulting with Hinds's appellate attorney. Counsel testified that he "could not imagine that [Hinds's] appellate counsel would have given [Hinds] favorable advice about testifying at [Leonce's] trial."

Judge Kelly concurred with that assessment. The PCR court observed, "[o]bviously, testimony given in court [at defendant's trial], when [Hinds] chose not to testify in his own trial, would have harmed [Hinds] going forward in his appellate work." The court concluded that "no competent counsel would have allowed [Hinds] to testify."

We agree that it is unlikely that Hinds's appellate counsel would have allowed Hinds to testify at defendant's trial while his own appeal was still

42

pending. Importantly for purposes of our application of the Strickland/Fritz test, defendant has not produced any evidence in the form of a certification or affidavit from Hinds's appellate counsel to suggest that Hinds would have testified had he been subpoenaed by defendant's counsel. Defendant has thus failed to show that Hinds was available to present an alibi defense at defendant's trial.

In these circumstances, we do not believe that defendant's counsel was ineffective for failing to secure Hinds as a trial witness. But even assuming that counsel was constitutionally derelict in his efforts to secure Hinds' testimony, we conclude, as did Judge Kelly, that defendant has failed to show that he suffered prejudiced from counsel's performance. We reach this conclusion for two independent reasons. First, as noted, defendant has failed to show that it is reasonably probable that more diligent efforts by his attorney would have secured Hinds as a trial witness. To the contrary, it is reasonably probable that more diligent efforts by counsel would have been unavailing.

Second, even if Hinds had been available as a witness, his testimony would not have been likely to change the trial outcome because his credibility as an alibi witness would have been severely undermined by inconsistent statements he had previously given to police. For example, Hinds had

previously stated that defendant was second in command of the gang and had encouraged the female gang members to kill Huff. Hinds also told Investigator Tulane that defendant was one of the individuals who tried to strangle Huff.

Judge Kelly considered Hinds's PCR hearing testimony in light of his prior inconsistent statements and concluded that, "[d]efendant cannot show that the jury would have credited any testimony of [Hinds] over the other witnesses' testimony." We add that Judge Kelly's credibility assessment was based in part of his ability to observe Hind's evidentiary hearing testimony. We therefore accept the PCR court's finding and conclude that defendant has failed to establish the second prong of Strickland with respect to the failure to call Hinds as a witness.

## C.

We next address defendant's claim that counsel was ineffective for failing to call codefendant Welch's mother, Arnetta Welch. Ms. Welch, who rented and resided in the house where the killings occurred, provided a certification claiming that she had been willing to testify that she did not see defendant assaulting Muriah Huff. She also claimed in her certification that defendant's trial counsel had never reached out to her.

Ms. Welch did not testify at the PCR evidentiary hearing because she could not be located. The PCR judge noted that she also could not be located at the time of defendant's trial despite efforts by both the prosecutor and defendant's trial counsel to contact her.

The PCR court also found that had Ms. Welch testified at trial in accordance with her PCR certification, her testimony would not have altered the outcome. Ms. Welch had previously given a statement to Investigator Tulane claiming she did not witness either of the murders. Additionally, Ms. Welch was not in her son's bedroom when Hawkins was murdered. Furthermore, she had been taken to her own bedroom at an early stage in the assault upon Muriah Huff. Presumably, she was removed and isolated to her bedroom so that she would not be an eyewitness when the attack on Huff escalated to lethal force. Because she did not have opportunity to observe either homicide, she had no way of knowing whether, when, and to what extent defendant became involved in either attack. Her prior statement to police that she had been isolated in her bedroom, in other words, would have impeached any testimony she might have given that defendant was not involved in the murders. We therefore affirm the PCR court's ruling that it was not reasonably probable that the trial outcome would have been different had she testified. Strickland, 466 U.S. at 687.

Finally, we reach defendant's last contention, raised for the first time on appeal in his pro se brief that Darryl Pierre, a fellow gang member involved in the murders, is prepared to recant his trial testimony. Because defendant did not raise this newly discovered evidence claim in his PCR petition, he is procedurally barred from raising it in this appeal. As a general proposition, appellate courts "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). The reliability and potential impact of Pierce's possible recantation is not an issue that goes to the jurisdiction of the trial court. Nor is it a matter of great public interest within the meaning of this basic principle of appellate practice and procedure.

Aside from any procedural bar, we decline to exercise original jurisdiction in determining whether Pierre's anticipated recantation is reliable and whether it would have had an impact on the verdict in view of the of the other evidence adduced by the State. See State v. Santos, 210 N.J. 129, 142 (2012) (explaining

that Rule 2:10-5 allows an appellate court to exercise original jurisdiction, but by exercising original jurisdiction, the court "would be addressing an evidentiary matter that should be addressed, on the record, in the first instance, by the [trial] court"); see also State v. Carter, 69 N.J. 420, 427 (1976) ("Courts generally regard recantation testimony as suspect and untrustworthy." (citation omitted)).

Any additional arguments raised by defendant on appeal that we have not already addressed lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1446-18T4